CASE NO. 1:17-cv-302-SCJ

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

---

IN THE MATTER OF:

WILLIAM F. PERKINS,

Appellant,

v.

LEHMAN BROTHERS, INC., ET AL.,

Appellees.

---

Bankruptcy Case No. A06-62966-PWB
Adversary Proceeding No. 08-06186

---

REPLY BRIEF OF APPELLANT

---

Robert E. Shields
DOFFERMYRE SHIELDS CANFIELD & KNOWLES, LLC
1355 Peachtree Street, N.E., Suite 1900
Atlanta, Georgia 30309
Telephone: (404) 881-8900
Facsimile: (404) 920-3246
E-mail: rshields@dsckd.com

Attorney for Appellant

## TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ............................................................. iii

PRELIMINARY STATEMENT ........................................................1

RESPONSE TO DEFENDANT'S STATEMENT OF THE STANDARD OF
REVIEW ...........................................................................................2

REPLY ARGUMENT .......................................................................4

1. The Bankruptcy Court Erred In Holding That the Ponzi Scheme
   Presumption Did Not Create A Genuine Dispute of Material
   Fact Regarding Wright's Actual Intent to Defraud Under
   Section 548(a)...........................................................................4

   A. There Are Genuine Disputes Of Material Fact Regarding
      Wright's Actual Intent To Defraud............................................5

   B. The Bankruptcy Court Erred In Limiting the Ponzi
      Scheme Presumption To Transfers That Directly And
      Materially Fraudulently Induce New Investors .........................8

   C. There Are Genuine Disputes Of Material Facts Whether
      The Oppenheimer Transfers Were In Furtherance Of The
      Ponzi Scheme.........................................................................14

2. The Bankruptcy Court Erred In Holding That Plaintiff's
   Evidence Was Insufficient, In The Absence Of The Ponzi
   Scheme Presumption, To Create A Genuine Dispute Of
   Material Fact On Fraudulent Intent....................................16

3. The Bankruptcy Court Erred In Ruling That Oppenheimer Was
   Entitled To Summary Judgment On Its Affirmative Defense Of
   Good Faith...............................................................................18

i

A.    Good Faith Is a Question of Fact for the Jury............................18

B.    The Bankruptcy Court's Test Of Good Faith Is Not In Accord With Other Cases In This Circuit.................................21

C.    The "Subjective" Test Of *In Re Teleservices* Also Requires An Inquiry Notice Evaluation Of What A Reasonable Transferee Would Know About Possible Fraud ...........................................................................................24

D.    There Are Genuine Disputes Of Material Fact Regarding Inquiry Notice ..........................................................................26

E.    Oppenheimer Failed To Meet Its Burden Of Proof On Its Good Faith Defense Even Under A Subjective Test ...............29

CONCLUSION ..............................................................................................30

CERTIFICATE OF COMPLIANCE.........................................................31

CERTIFICATE OF SERVICE ...................................................................32

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 252 (1986)............................................18

*Bakst v. Bank Leumi, USA (In re D.I.T., Inc.),* 561 B.R. 793
(Bankr. S.D. Fla. 2016)...................................................................................17, 18

*Bear, Stearns Securities Corp. v. Gredd (In re Manhattan Investment
Fund LTD.),* 397 B.R. 1 (SDNY 2007) ............................................................14, 28

*Brown v. Third National Bank (In re Sherman),* 67 F.3d 1348
(8th Cir. 1995)..................................................................................................2

*Christian Brothers High School Endowment v. Bayou No Leverage Fund, LLC
(In re Bayou Group LLC),* 439 B.R. 284 (SDNY 2010) ...............................7, 17, 28

*Cuthill v. Greenmark, LLC (In re World Vision Entertainment, Inc.),* 275
B.R. 641 (Bankr. M.D. Fla. 2002) ...........................................................12, 14, 22

*DeGiacomo v. Sacred Heart University (In re Palladino),* 556 B.R. 10
(Bankr. Mass. 2016)..................................................................................7, 9, 10, 12

*Desmond v. Am. Express Centurion Bank (In re Callas),* 557 B.R. 647
(Bankr. N.D. Ill. 2016)..........................................................................................19

*Durkin v. Shields,* 1997 WL 808636 (S.D. Cal. Aug. 14, 1997) ......................20, 21

*Erie Marine Enterprises, Inc. v. Nationsbank, N.A. (In re Erie Marine
Enterprises, Inc.),* 216 B.R. 529 (Bankr. W.D. Pa. 1998) ................................19, 20

*Gowan v. The Patriot Group (In re Dreier LLP),* 452 B.R. 391
(Bankr. SDNY 2011) ...........................................................................................14

*Gray v. Manklow (In re Optical Tech., Inc.),* 246 F.3d 1332
(11th Cir. 2001)..................................................................................................3

*Gredd v. Bear Stearns Securities Corp. (In re Manhattan Inv. Fund LTD.),*
310 B.R. 500 (Bankr. SDNY 2002) ........................................................................5

*Ivey v. Cole (In re Whitley),* 2013 Bankr. LEXIS 1892, at *5
(M.D. N.C. 2013) ..................................................................................................18

*Janvey v. Democratic Senatorial Campaign Committee, Inc.,* 712 F.3d 185
(5th Cir. 2013) ......................................................................................................14

*Jobin v. McKay (In re M&L Bus. Mach. Co.),* 84 F.3d 1330
(10th Cir. 1996) ....................................................................................................22

*Kapila v. Integra Bank, N.A. (In re Pearlman)*, 440 B.R. 569
(Bankr. M.D. Fla. 2010)........................................................................................22

*Kapila v. Phillips Buick-Pontiac-GMC Truck, Inc. (In re ATM Fin. Sevs.,
LLC),* 2011 WL 2580763 at * 4  (Bankr. M.D. Fla. June 24, 2011) ......................9

*Littleton v. Lanac Inv., LLC (In re Kudzu Marine, Inc.,),* 2017 WL 979018
(S.D. Al. Mar. 13, 2017) .......................................................................................27

*Martinez v. Hutton (In re Harwell),* 628 F.3d 1312 (11th Cir. 2010) ....................23

*McHale v. Boulder Capital LLC (In re 1031 Tax Group, LLC),* 439 B.R. 47
(Bankr. SDNY 2010) .............................................................................................14

*Meoli v. The Huntington National Bank,* 848 F. 3d 716 (6th Cir. 2017).................25

*Meoli v. The Huntington National Bank (In re Teleservices Group, Inc.),*
444 B.R. 767 (Bankr. W.D. Mich. 2011).............................................24, 25, 29, 30

*Mercury Companies, Inc. v. FNF Sec. Acquisition, Inc. (In re Mercury
Companies, Inc.)*, 2014 WL 1316163 (Bankr. D. Colo. Mar. 31, 2014)...........26, 27

*Merrill v. Abbott (In re Independent Clearing House Co.)*, 77 B.R. 843
(D. Utah 1987) ...................................................................................................7, 10

iv

*Musselman v. David Jones Ins. Inc. (In re Florida Eco-Safaris, Inc.),*
2014 WL 7261545 (Bankr. M.D. Fla. Dec. 19, 2014)...............................................27

*Nat'l State Bank v. Fed. Res. Bank,* 979 F.2d 1579 (3rd Cir. 1991)........................18

*Perkins v. Crown Financial, LLC (In re Int'l Mgmt. Assocs., LLC),*
2016 WL 552491 (Bankr. N.D. Ga. Feb. 9, 2016) .....................................11, 12, 23

*Perkins v. Haines,* 661 F.3d 623 (11th Cir. 2011) .....................................4, 5, 14, 22

*Perlman v. Bank of America, N.A.,* 561 Fed. Appx 810
(11th Cir. 2014).................................................................................................22, 23

*Perlman v. Wells Fargo Bank, N.A.*, 559 Fed. Appx. 988
(11th Cir. 2014).................................................................................................21, 22

*Ray Comm. v. Clear Channel Commc'n, Inc.* 673 F.3d 294
(4th Cir. 2012).........................................................................................................18

*Rodrigues v Farm Stores Grocery, Inc.,* 518 F.3d 1259 (11th Cir. 2008)...............22

*Schneider v. Barnard,* 508 B.R. 533 (E.D.N.Y. 2014).....................................15, 16

*Stettin v. The Dan Marino Foundation, Inc., (In re Rothstein),* 483 B.R. 15
(Bankr. S.D. Fla. 2012).............................................................................................20

*Stoebner v. Opportunity Fin., LLC (In re Polaroid Corp.),* 543 B.R. 888
(Bankr. D. Minn. 2016).....................................................................................11, 13

*Stoebner v. Opportunity Fin., LLC,* 562 B.R. 368 (D. Minn. 2016) ......................17

*Stoebner v. Ritchie Capital Management LLC (In re Polaroid),* 472 B.R. 22
(Bankr. Minn. 2012).........................................................................................11, 14

*Templeton v. O'Cheskey (In re Am. Housing Found.),* 785 F.3d 143
(5th Cir. 2015).........................................................................................................28

*Wagner v. Cunningham (In re Vaughan Co.),* 481 B.R. 752
(Bankr. NM 2012) .................................................................................................14

*Wagner v. Oliva (In re Vaughan Co.),* 500 B.R. 778 (Bankr. D.N.M.
2013) ....................................................................................................................10

*Welt v. Publix Super Markets (In re Phoenix Div. Inv. Corp.)*, 2011
WL 2182881 at *4 (Bankr. S.D. Fla. June 2, 2011) ..................................................7

*Wiand v. Waxenberg,* 611 F. Supp. 2d 1299 (M.D. Fl. 2009) ..................................21

## Statutes & Regulations

11 U.S.C. § 548 .......................................................................................5, 11, 13

11 U.S.C. § 548(a) .......................................................................................4, 5, 17

11 U.S.C. § 548(a)(1)(A) ......................................................1, 4, 5, 7, 11, 17

11 U.S.C. § 548(c) ................................................................................16, 23, 24

11 U.S.C. § 550 ....................................................................................19, 20, 22

11 U.S.C. § 550(a)(1) .........................................................................................23

## Other Authorities

Wright, Miller, and Kane, *Federal Practice and Procedure: Civil* §2716
at 315-17 (4th ed. 2016) ............................................................................................3

## <u>REPLY BRIEF OF APPELLANT WILLIAM F. PERKINS</u>

### PRELIMINARY STATEMENT

In this appeal of the Bankruptcy Court's granting Defendant Oppenheimer's motion for summary judgment, Appellant William F. Perkins, Plan trustee for International Management Associates, LLC ("IMA") and affiliated entities under the Plan of Reorganization, argued (1) that the Court erred in holding that the Ponzi scheme presumption did not apply so as to create a genuine issue of material fact regarding whether the perpetrator of the scheme, Kirk Wright, made the Oppenheimer transfers with the actual intent to defraud within the meaning of §548(a)(1)(A) of the Bankruptcy Code, (2) that the Court erred in holding that in the absence of the presumption there was no genuine issue of material fact regarding actual intent to defraud, and (3) that the Court erred in holding that there was no genuine issue of material fact regarding Oppenheimer's affirmative defense of good faith.

In granting summary judgment on the actual fraud issue, the Court adopted a novel new test, unsupported by and contrary to existing case law, limiting the Ponzi scheme presumption to transfers that "directly and materially" fraudulently induce new investors.  In regard to the affirmative defense, the Court also rejected the almost universally-accepted objective test of good faith in favor of a subjective

one, conceding that the objective test would preclude summary judgment on Oppenheimer's good faith defense. Oppenheimer, in its Brief, attempted to justify the Bankruptcy Court's radical departures from established precedent, and its own prior rulings, by arguing that the Court's reasoning was in accord with the general principles of the decisions, if not the holdings, and was well-reasoned.   Its argument is incorrect.   The case law is clear and contrary to the Bankruptcy Court's unsound reasoning.   This Reply Brief will respond to Oppenheimer's arguments by reviewing the cases it references.

## RESPONSE TO DEFENDANT'S STATEMENT OF THE STANDARD OF REVIEW

Appellee Oppenheimer based its argument on a misstatement of the standard of review for a summary judgment appeal.  It asserted that the Bankruptcy Court's factual findings are reviewed under a clearly erroneous standard, and that a finding of actual fraudulent intent is a factual finding, citing a case referenced in a footnote – *Brown v. Third National Bank (In re Sherman),* 67 F.3d 1348, 1353 (8th Cir. 1995) – in which there had been a trial by the Court, instead of a summary judgment motion.  (Appellee's Brief at 3, Doc. 33.)  Although a Court's factual finding of fraudulent intent or good faith after a trial or evidentiary hearing is subject to the clearly erroneous standard, the standard of review for a summary judgment appeal is *de novo.*  Unlike a hearing or trial where the Court is the trier of

2

fact, the Court does not make factual findings on summary judgment motions.  It merely makes the legal determination of whether there are genuine disputes of material fact and whether the movant is entitled to judgment as a matter of law.

This distinction was made by the Eleventh Circuit in *Gray v. Manklow (In re Optical Tech., Inc.),* 246 F.3d 1332, 1335 (11th Cir. 2001) when it wrote:

> [W]e take this opportunity to make clear that both the district court and this Court review a bankruptcy court's entry of summary judgment *de novo.* …While it is true that, in general, a district court reviews a bankruptcy court's factual findings for clear error, we do not read *In re Club Assocs.* to hold, nor could it be so read in light of our precedent, that the standard of review for summary judgment, which by definition involves no findings of fact, is anything other than *de novo.*

*See also* Wright, Miller, and Kane, *Federal Practice and Procedure: Civil* §2716 at 315-17 (4th ed. 2016).

Because there was no trial or evidentiary hearing, the Bankruptcy Court here did not make any factual findings of actual intent to defraud or good faith.  It merely made the legal determination of whether there were genuine issues of material fact.   Accordingly, the standard of review on this appeal is *de novo*.

3

**REPLY ARGUMENT**

1.     **The Bankruptcy Court Erred In Holding That the Ponzi Scheme Presumption Did Not Create A Genuine Dispute of Material Fact Regarding Wright's Actual Intent to Defraud Under Section 548(a).**

The first argument in Appellant Perkins' Brief was that the Bankruptcy Court erred by holding that the Ponzi scheme presumption did not apply to create a genuine dispute of material fact regarding whether Kirk Wright made the Oppenheimer transfers with the actual intent to hinder, delay, or defraud creditors within the meaning of §548(a)(1)(A).   Appellee Oppenheimer responded by arguing that the Bankruptcy Court correctly fashioned a test for the "in furtherance of the scheme" phrase used by the Eleventh Circuit in adopting the presumption in *Perkins v. Haines,* 661 F.3d 623, 626 (11th Cir. 2011).   Oppenheimer acknowledged that the new test adopted by the Bankruptcy Court limited the Ponzi scheme presumption to transfers that "directly and materially" fraudulently induced new investors.  (Appellee's Brief at 18.)

Appellant argued that the Bankruptcy Court's novel new "test" was contrary to the case law, general principles of bankruptcy law, and the literal wording of §548(a)(1)(A).  Oppenheimer could not cite any case that had imposed a limitation on the presumption that the transfer must "directly and materially" fraudulently induce new investors.  It also failed to respond at all to the fact that this Court in a

4

prior appeal in this case already concluded that the Ponzi scheme presumption "satisfied the actual intent to defraud requirement" of §548.   (Doc 27 at 9.)  Most importantly, the issue on the summary judgment motion was whether there were genuine disputes of material fact regarding <u>Wright's actual intent</u> to defraud under § 548(a), not whether the transfers directly and materially induced new investors. The Bankruptcy Court cannot avoid the conclusion that there is a genuine dispute of material fact simply by adopting a completely new test that allegedly would make the disputed facts irrelevant.

## A.   There Are Genuine Disputes Of Material Fact Regarding Wright's Actual Intent To Defraud.

The ultimate issue here is whether Wright had the actual intent to hinder, delay, or defraud within the meaning of §548(a)(1)(A).  It is almost impossible to conclude that Wright did not have the actual intent, let alone grant summary judgment on the basis that Perkins cannot prove the intent to defraud.   The Eleventh Circuit, and the Bankruptcy Court, already held that Wright operated the IMA entities "as instruments of a Ponzi scheme." *Perkins v. Haines,* 661 F.3d 623, 625 (11th Cir. 2011).  It is undisputed that Wright invested only a small portion of the investors' money IMA took in, and for the amounts actually invested he suffered large losses but reported large gains and claimed that IMA had assets under management far in excess of any funds actually invested.  He used investor

5

money to support his lavish life style and personal purchases.  To prevent the discovery of his embezzlement and investment losses, he paid off earlier investors with money obtained from later investors.  He was convicted in U.S. District Court on various counts of fraud in connection with the Ponzi scheme.  (For a more complete statement of the facts regarding the operation of the Ponzi scheme *see* Appellant's Brief at 2-4, Doc. 24.)

But, of course, the issue in this avoidance action is whether the transfers to Oppenheimer were made with the actual intent to defraud.  The Bankruptcy Court conceded that the transfers to Oppenheimer account were "part of the fraudulent Ponzi scheme," that "Wright used the Oppenheimer account to hide the fraud," and that "Wright's intent in making the transfers to the Oppenheimer account was to fraudulently induce future investors to put money in."  (Order at 45, 48, Doc. 259.) It surely follows from these concessions that there is at least a genuine dispute of material fact regarding whether Wright had the actual intent to defraud in making the transfers since, as several courts have said, "transfers made in the course of a Ponzi operation could have been made for no purpose other than to hinder, delay or defraud creditors."   *See, e.g., Gredd v. Bear Stearns Securities Corp. (In re Manhattan Inv. Fund LTD.),* 310 B.R. 500, 518 (Bankr. SDNY 2002).

The Ponzi scheme presumption primarily has been used to permit plaintiffs

in §548(a)(1)(A) or similar cases to obtain summary judgment and avoid an unnecessary trial on the intent of the perpetrator of the scheme. *See, e.g., Christian Brothers High School Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group LLC),* 439 B.R. 284, 305 (SDNY 2010). It does not follow that if the presumption is not applicable the defendant is entitled to summary judgment since there is still is "an issue of fact to be resolved at trial" regarding the defendant's actual intent. *Merrill v. Abbott (In re Independent Clearing House Co.)*, 77 B.R. 843, 860 (D. Utah 1987). Even the cases cited by Oppenheimer on whether the presumption applied, still denied the defendant's motion for summary judgment because there remained a genuine dispute of material fact regarding intent. *See, e.g., Welt v. Publix Super Markets (In re Phoenix Div. Inv. Corp.)*, 2011 WL 2182881 at *4 (Bankr. S.D. Fla. June 2, 2011) (Question of fact whether payment for groceries was a transfer in furtherance of Ponzi scheme.). It was only when it was undisputed that the payment was not a part of, was not used to hide, and was totally unrelated to the Ponzi scheme that a court granted summary judgment to the defendant. *DeGiacomo v. Sacred Heart University (In re Palladino),* 556 B.R. 10, 14 (Bankr. Mass. 2016) (Payment of college tuition for daughter).

### B.     The Bankruptcy Court Erred In Limiting the Ponzi Scheme Presumption To Transfers That Directly And Materially Fraudulently Induce New Investors.

The Bankruptcy Court attempted to avoid the unassailable logic of the cases either granting the plaintiff summary judgment based on the Ponzi scheme presumption or denying the defendant summary judgment because actual intent is almost always a question of fact for the jury, by simply adopting a new test that excludes all transfers that do not directly and materially induce new investors, regardless of the actual intent to defraud.  Its novel new test has no support in the case law, is contrary to the clear wording of the statute, and is inconsistent with fundamental principles of fraudulent transfer law.

Oppenheimer argued that the Bankruptcy Court was merely defining the phrase "in furtherance of the scheme" used by the Eleventh Circuit.  But nothing in that phrase allows the Court to exclude all categories of fraudulent transfers except fraudulent inducement of new investors, regardless of actual intent and despite the fact that the transfers were "part of the fraudulent Ponzi scheme," were "used to hide the fraud," and were intended "to fraudulently induce new investors."  The Court was not merely defining the phrase, it was seeking to find a way to disregard the obvious genuine dispute of material fact regarding actual fraudulent intent.

Oppenheimer attempts to justify this illogical restriction of the Ponzi scheme

presumption by asserting that some limitation must be imposed "lest it swallow every transfer made by a debtor." (Appellee Brief at 19.) But that reasoning provides no rationale for limiting the presumption to transfers that "directly and materially" fraudulently induce new investors and exclude all kinds of other fraudulent transfers made in furtherance of the Ponzi scheme. No such limitation was imposed by either of the cases it cited. In fact, in *Kapila v. Phillips Buick-Pontiac-GMC Truck, Inc. (In re ATM Fin. Sevs., LLC),* 2011 WL 2580763 at * 4 (Bankr. M.D. Fla. June 24, 2011) the Court noted that because "[e]very payment made by the debtor to keep the scheme on-going [is] made with actual intent to hinder, delay, or defraud creditors" a trustee can prove actual fraudulent intent by showing that the transfers were in furtherance of the scheme. It denied the defendant's motion for summary judgment because there was a question of fact regarding whether the purchase of cars by the operators of the scheme was in furtherance of the scheme. *Id.* at *5, 11. Similarly, in *In re Palladino* the Court did not impose any such limitation but instead noted that "[t]ransfers that perpetuate or are necessary to the continuance of the fraudulent scheme are subject to the presumption because they relate directly to the intent to defraud," but found that the separate payment of college tuition for the daughter of the perpetrator of the scheme did not perpetuate and was totally unrelated to the scheme. 556 B.R. at

9

14.

Although Oppenheimer failed to cite any case that imposed a limitation on the presumption that transfers must "directly and materially" fraudulently induce new investors, it claimed that the limitation was consistent with existing case law. None of the cases it references, however, provides any support for, and in fact, much of the language in the decisions is inconsistent with imposing any such limitation. Oppenheimer asserted that *Wagner v. Oliva (In re Vaughan Co.),* 500 B.R. 778 (Bankr. D.N.M. 2013) and *In re Independent Clearing House Co.,* 77 B.R. at 860 were "in accord" with the Bankruptcy Court's limitation. (Appellee Brief at 22.) They are not. Both were cases in which summary judgment was granted to the plaintiff on the basis of the presumption. Neither imposed any limitation that the transfers had to directly and materially fraudulently induce new investors. In fact, both used expansive language regarding the scope of the presumption. *In re Vaughan Co.,* 500 B.R. at 789 (Transfers must be "in connection with" the Ponzi scheme.); and *In re Independent Clearing House Co.,* 77 B.R. at 861 (Intent is not debatable given the fact that debtor was carrying on a Ponzi scheme.). Moreover, in *In re Independent Clearing House Co.* the Court denied the defendant's motion for summary judgment on the basis that even if the Ponzi scheme presumption is not applicable there is still "an issue of fact to be

10

resolved at trial" regarding the defendant's actual intent. *Id.* at 860.

Oppenheimer also claimed that the Bankruptcy Court's limitation is consistent with *Stoebner v. Opportunity Fin., LLC (In re Polaroid Corp.),* 543 B.R. 888 (Bankr. D. Minn. 2016). The case is not even relevant to the issue because it involved state law claims, not an avoidance action under §548(a)(1)(A), and importantly the relevant governing state law, Minnesota, had previously rejected the adoption at all of the Ponzi scheme presumption. *Id.* at 909. The reference to transaction-by-transaction analysis was under the traditional "badges of fraud" approach, an approach that is so cumbersome and unnecessary in a Ponzi scheme case that virtually all other courts have adopted the presumption as a reasonable alternative. But an earlier decision in the Polaroid bankruptcy proceeding actually applied the Ponzi scheme presumption to the Federal §548 claim involving the transfer of lien rights to intellectual property, clearly rejecting any assertion that only transfers that directly and materially fraudulently induce new investors come within the presumption. *Stoebner v. Ritchie Capital Management LLC (In re Polaroid),* 472 B.R. 22, 40-41 (Bankr. Minn. 2012).

The Bankruptcy Court's limitation not only is contrary to the extensive case law, it is contrary to its own prior rulings in this bankruptcy. In *Perkins v. Crown Financial, LLC (In re Int'l Mgmt. Assocs., LLC),* 2016 WL 552491 (Bankr. N.D.

11

Ga. Feb. 9, 2016) this same Court did not limit the Ponzi scheme presumption to transfers that fraudulently induce new investors, but instead applied it to the repayment of a property loan, reasoning that the transfer "continued" the scheme and therefore was in furtherance of it, citing *Cuthill v. Greenmark, LLC (In re World Vision Entertainment, Inc.)*, 275 B.R. 641, 656 (Bankr. M.D. Fla. 2002). It also ruled that once the trustee has proved the Ponzi scheme, the defendant "must produce probative, significant evidence" that there was no intent to defraud, in order to avoid summary judgment in favor of the trustee. *Id.* at * 8. The very cases the Court rejected here, it accepted in *Crown Financial* in support of its ruling.

The Bankruptcy Court's limitation also is contrary to certain fundamental principles of fraudulent transfer law. First, historically intent was almost always a question of fact for the jury. The Ponzi scheme presumption allowed summary judgment for the plaintiff, however, but not for the defendant because in the absence of the presumption there was still a question of fact. Oppenheimer disputed the argument but could only cite one Ponzi scheme case where summary judgment had been granted to the defendant. (Appellee's Brief at 25, citing *In re Palladino*.) The case does not dispute the fundamental principle that fraudulent intent is a question of fact for the jury, but stated that it was undisputed that the

separate payment of college tuition for the daughter of the perpetrator was totally unrelated to the Ponzi scheme.  That is hardly the case here when the Bankruptcy Court concluded that the transfers to Oppenheimer were "a part of the scheme," were used "to hide the fraud," and intended "to fraudulently induce new investors."

Perkins also argued that the Bankruptcy Court's limitation was contrary to the principle that only the debtor's intent is relevant and that hindering or delaying creditors comes within the provision as well.  Oppenheimer had no real response to either point.  It merely referenced the state law decision in *Stoebner v. Opportunity Fin., LLC*, instead of the relevant one asserting the Federal §548 claim.  Appellant also argued that the Court's approach was contrary to the purpose of the Ponzi scheme presumption of avoiding the inefficient transaction-by-transaction analysis. Oppenheimer responded by asserting that the Court was required to focus on each specific transaction.  Even if the Court needed to focus on each transaction, using the Ponzi scheme presumption is still fundamentally different and more efficient than doing the cumbersome historic "badges of fraud" analysis.  Oppenheimer did not dispute that a primary purpose of the Ponzi scheme presumption was to avoid such a cumbersome analysis.

**C.    There Are Genuine Disputes Of Material Facts Whether The Oppenheimer Transfers Were In Furtherance Of The Ponzi Scheme.**

The case law universally recognizes that the Ponzi scheme presumption applies to transfers that are "part" of, "in the course of," "perpetuate," "keep on-going," or are "in furtherance" of the Ponzi scheme, without ever limiting the transfers to those that directly and materially fraudulently induce new investors. *See, e.g., Perkins v. Haines,* 661 F.3d at 626; *McHale v. Boulder Capital LLC (In re 1031 Tax Group, LLC),* 439 B.R. 47, 72  (Bankr. SDNY 2010); *Gowan v. The Patriot Group (In re Dreier LLP),* 452 B.R. 391, 424 (Bankr. SDNY 2011); *Wagner v. Cunningham (In re Vaughan Co.),* 481 B.R. 752, 759 (Bankr. NM 2012); *In re Polaroid Corp.,* 472 B.R. at 40-41; *Janvey v. Democratic Senatorial Campaign Committee, Inc.,* 712 F.3d 185, 196, 198 (Fifth Cir. 2013); *In re World Vision Entertainment*, 275 B.R. at 656; and *Bear, Stearns Securities Corp. v. Gredd (In re Manhattan Investment Fund LTD.*), 397 B.R. 1 (SDNY 2007).  The Bankruptcy Court here conceded that the evidence supported the conclusion that the Oppenheimer transfers were a "part of the fraudulent Ponzi scheme," were "used to hide the fraud," and the account was established and maintained by Wright "for the purpose of continuing the Ponzi scheme."  (Order at 45, 48, Doc. 259.)  Obviously, there are genuine issues of material fact regarding actual fraud

14

using the standard approach recognized by the cases.

The Bankruptcy Court tries to avoid this clear conclusion by simply defining away what comes within the scheme. It limits the presumption to transfers that fraudulently induce new investors. It concluded that the transfers did not induce new investors because they were not told the actual results from the Oppenheimer account. The Court conceded, however, that "Wright's intent in making the transfers to the Oppenheimer account was to fraudulently induce future investors to put money in." (Order at 48.) The whole point of the fraudulent scheme was to misrepresent the results of the investment, not to provide the actual results. Oppenheimer made no attempt to justify the Court's inconsistent reasoning.

Instead, it claimed that the transfers to Oppenheimer were "outside" of the Ponzi scheme, were used to purchase securities at prevailing rates, and that Oppenheimer's name was not used to market the scheme. (Appellee Brief at 28.) The assertion that the transfers were used to purchase securities and Oppenheimer's name was not used to market the scheme does not make the transfers "outside" of the scheme. To the contrary, the Bankruptcy Court acknowledged that the evidence permitted the conclusion that the transfers were "a part of the fraudulent Ponzi scheme" and Wright's intent was to fraudulently induce future investors.

15

In support of its argument that the transfers were outside the scheme Oppenheimer cited *Schneider v. Barnard,* 508 B.R. 533 (E.D.N.Y. 2014).  The Court there, however, actually held that the rent transfers were subject to the Ponzi scheme presumption because the presumption "applies to almost all transfers made by the Ponzi entity."  *Id.* at 543.  After reviewing the scope of the presumption, the Court concluded that "except for transfers to a person who took in good faith and for reasonably equivalent value" under §548(c), "all other transfers made by the debtor during an ongoing Ponzi scheme are part of the overall fraud" and subject to the presumption.  *Id.* at 545.

### 2.    The Bankruptcy Court Erred In Holding That Plaintiff's Evidence Was Insufficient, In The Absence Of The Ponzi Scheme Presumption, To Create A Genuine Dispute Of Material Fact On Fraudulent Intent.

In regard to the second issue, Appellant Perkins argued that intent to defraud normally cannot be resolved on a motion for summary judgment because it involves a factual question on a party's state of mind, that fraudulent intent may be inferred from the circumstances, and intent can be proven by evidence of a criminal conviction of fraud, as occurred here.  Oppenheimer did not dispute any of these arguments in its Brief.  Perkins also argued that the Bankruptcy Court's assertion that fraudulent inducement of new investors was not actual intent to defraud was both contradictory and inconsistent with its Ponzi scheme

16

presumption argument, totally illogical, and contrary to black letter tort law.  Again Oppenheimer ignored the arguments and did not respond.

Instead, Oppenheimer repeated its argument that the transfers were "outside" the Ponzi scheme, despite the Bankruptcy Court's concession to the contrary, citing *Stoebner v. Opportunity Fin., LLC,* 562 B.R. 368 (D. Minn. 2016). (Appellee's Brief at 36.)   The case is inapplicable.  It was an appeal of a motion to dismiss for lack of standing and failure to plead fraud with particularity under Minnesota's fraudulent transfer statute, not Federal §548(a).  The District Court affirmed the dismissal on the failure to plead actual fraud count because the state law claim required proof of the lack of "reasonably equivalent value," which is neither an element of, nor a defense by itself to, a §548(a)(1)(A) claim.  Under the federal statute "[a] fraudulent transfer may be avoided in its entirety…whether or not the debtor received value in the exchange." *In re Bayou Group, LLC,* 439 B.R. at 304.

Oppenheimer also cited *Bakst v. Bank Leumi, USA (In re D.I.T., Inc.),* 561 B.R. 793 (Bankr. S.D. Fla. 2016), in support of its argument.  The case held that there was no actual fraud there because the transfers "were regular payments on the Debtor's commercial debt obligations" and the transferee was not a participant in the fraud.  That case, however, was a motion to dismiss for failure to allege actual

17

fraud in a matter that did not relate to a Ponzi scheme, but instead involved the payment of an antecedent commercial debt that was unrelated to any alleged fraud. *Id.* at 803. It is both factually and legally irrelevant to the issues here.

### 3.     The Bankruptcy Court Erred In Ruling That Oppenheimer Was Entitled To Summary Judgment On Its Affirmative Defense Of Good Faith.

#### A.     Good Faith Is a Question of Fact for the Jury.

Appellant commenced his argument on the affirmative defense of good faith by noting that summary judgment can rarely be granted on the good faith defense because good faith is almost always a question of fact for the jury. Oppenheimer responded by claiming that Perkins was seeking to impose a different standard for summary judgment on an affirmative defense and citing authority that the same summary judgment standard applies to affirmative defense. Appellant does not dispute that the standard is the same, but that is not a response to the extensive case law that states that good faith normally is a question of fact for the jury, and as a result the application of the summary judgment standard is stringent. Contrary to Oppenheimer's assertion, Appellant did not just rely on a single case, and the case Oppenheimer references, *Ivey v. Cole (In re Whitley),* 2013 Bankr. LEXIS 1892, at *5 (M.D. N.C. 2013), in fact, cites a Third Circuit (*Nat'l State Bank v. Fed. Res. Bank,* 979 F.2d 1579, 1582 (3rd Cir. 1991)), a Fourth Circuit (*Ray Comm. v. Clear*

*Channel Commc'n, Inc.* 673 F.3d 294, 299 (4th Cir. 2012)), and a U.S. Supreme Court decision (*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 252, 250 (1986)) in support of its statement of the summary judgment standard used.

Oppenheimer did not cite any authority disputing that good faith is normally a question of fact for the jury.  The cases it referenced, where summary judgment was granted, did not dispute that proposition and are easily distinguished.  Most importantly, all adopted the "objective standard" for evaluating good faith. *Desmond v. Am. Express Centurion Bank (In re Callas),* 557 B.R. 647 (Bankr. N.D. Ill. 2016) recognized the objective standard but ruled that under §550 there was no duty of inquiry for the credit card company as a subsequent transferee, instead of the initial transferee, so there were no disputed facts regarding the applicability of the defense.  It explained how the result would be different for an initial transferee such as the depository bank.  *Id.* at 655-57.  Of course, Oppenheimer was an initial transferee with a duty of inquiry, not a subsequent transferee like American Express.  Finally, it also is significant that the case did not involve a Ponzi scheme or the highly regulated securities industry, whose written standards also impose a duty of inquiry and monitoring "red flags" that may indicate fraud.

Similarly, Oppenheimer's citation of *Erie Marine Enterprises, Inc.  v.*

*Nationsbank, N.A. (In re Erie Marine Enterprises, Inc.),* 216 B.R. 529, 536-37 (Bankr. W.D. Pa. 1998) does not support its argument.  The Court there held that an objective standard applied to the §550 good faith and lack of knowledge defense.  It also concluded that the Bank was a subsequent transferee, instead of an initial transferee, and as such did not have a duty to investigate "in the absence of inquiry notice."  *Id.* at 537.  Of course, in this action the Bankruptcy Court conceded that if the objective standard and inquiry notice applied, there was a genuine issue of material fact that precluded summary judgment.  (Order at 59.)

Oppenheimer's citation of *Stettin v. The Dan Marino Foundation, Inc., (In re Rothstein),* 483 B.R. 15 (Bankr. S.D. Fla. 2012) also fails to support its argument.  The issue there was whether the Foundation gave value for the transfer as required by §550, not whether it was done in good faith, when the sale was part of a competitive, open to the public, charitable auction.  *Id.* at 21-22.  Finally, the citation of *Durkin v. Shields,* 1997 WL 808636 (S.D. Cal. Aug. 14, 1997) is particularly inapplicable.  That case also recognized that the good faith defense was to be decided on an objective basis, that "issues of intent generally are inappropriate for summary judgment," and that almost all cases have concluded that good faith was a question of fact for the jury, but held that where the challenged transfer was part of a court-approved settlement, good faith was

established as a matter of law.  *Id.* at 14, 18, 20-21, 23.

### B. The Bankruptcy Court's Test Of Good Faith Is Not In Accord With Other Cases In This Circuit.

Appellant Perkins argued that the Bankruptcy Court's "subjective" test of good faith was contrary to decisions in almost all other courts, including six Circuit Courts of Appeal.  Oppenheimer responded by claiming that the Bankruptcy Court's rationale "accords" with other cases in this circuit.  Its assertion is incorrect.  The cases that have addressed the issue in this circuit have all adopted the objective standard to evaluate the good faith defense.

In *Wiand v. Waxenberg,* 611 F. Supp. 2d 1299, 1319 (M.D. Fl. 2009) the District Court held that the "courts apply an objective test" to the good faith defense under Florida's comparable fraudulent transfer statute, such that knowledge of facts and circumstances that "would have induced a ordinarily prudent person to make inquiry" creates a genuine issue of material fact precluding summary judgment.  It held that the parties' competing evidence on good faith "presents a classic issue for the trier of fact."  *Id.* at 1320.  The Eleventh Circuit in an unpublished Per Curiam opinion in *Perlman v. Wells Fargo Bank, N.A.*, 559 Fed. Appx. 988 (11th Cir. 2014) upheld the dismissal of fraudulent transfer claim, citing with approval *Wiand*'s ruling that good faith was evaluated on an objective basis, and noting that there was no allegation that "an ordinary prudent person

21

would have been induced to make inquiry or investigate." *Id.* at 994.

Similarly, the Bankruptcy Court for the Middle District of Florida in *In re World Vision Entertainment, Inc.,* 275 B.R. at 659 held that "[g]ood faith is judged using an objective standard," citing *Jobin v. McKay (In re M&L Bus. Mach. Co.),* 84 F.3d 1330 (10th Cir. 1996). The Eleventh Circuit in *Perkins v. Haines,* 661 F.3d at 626, cited with approval *In re World Vision Entertainment, Inc.* in adopting the Ponzi scheme presumption but did not discuss the good faith defense. Another Bankruptcy Court decision in the Middle District of Florida in *Kapila v. Integra Bank, N.A. (In re Pearlman)*, 440 B.R. 569, 576-577 (Bankr. M.D. Fla. 2010) also held that good faith was a "fact intensive inquiry" precluding summary judgment. 440 B.R. at 576-77.

The objective standard for good faith has been used by the Eleventh Circuit in analogous circumstances. In a Fair Labor Standards Act case, the Court concluded that the good faith defense under the Act was based on an objective test and was a "fact intensive issue" to be decided by the trier of fact. *Rodrigues v Farm Stores Grocery, Inc.,* 518 F.3d 1259, 1272-73 (11th Cir. 2008). Importantly, in an unpublished Per Curiam opinion regarding whether the defendant bank exercised good faith under §550 of the Bankruptcy Code, the Eleventh Circuit cited *Rodrigues* for the proposition that good faith is a fact intensive issue, clearly

22

accepting that the applicable test was an objective one. *Perlman v. Bank of America, N.A.,* 561 Fed. Appx 810, 814 (11th Cir. 2014).

Oppenheimer claims, however, that *Martinez v. Hutton (In re Harwell),* 628 F.3d 1312 (11th Cir. 2010) supports using a subjective test for good faith. The Eleventh Circuit in *In re Harwell* imposed a good faith requirement on the exercise of equitable exceptions to §550(a)(1). Specifically it held that the defendant has the burden of proving that it "acted in good faith and as an innocent participant in the fraudulent transfer." *Id.* at 1323 (emphasis added). Clearly the Court was drawing a distinction between the subjective term "innocent" and good faith by the use of the connector "and" between them. The Court indicated that it is not enough merely to prove that the defendant was an "innocent participant." The defendant must also prove that it acted in good faith. This clearly suggests that good faith is judged not just by the subjective test of what the defendant knew, that is whether he was an "innocent participant," but also by the objective test of what he should have known under the facts and circumstances. It obviously does not support Oppenheimer's contention that *In re Harwell* adopted a subjective test to the exclusive an objective one.

Finally, the Bankruptcy Court in the earlier adversary case in this proceeding, *Perkins v. Crown Financial, LLC,* 2016 WL 552491 at *12, already

held that an objective test applied to defendant's good faith defense under §548(c) and denied summary judgment.  It reasoned that "[w]hat is reasonable and prudent under the circumstances for purposes of the good faith test is a matter of fact" and precluded summary judgment, despite the fact that there literally was no evidence of "red flags" there suggesting fraud, unlike this case.  *Id.* at 13.  Its legal reasoning in that case was completely contrary to its analysis here.

> ### C.   The "Subjective" Test Of *In Re Teleservices* Also Requires An Inquiry Notice Evaluation Of What A Reasonable Transferee Would Know About Possible Fraud.

Oppenheimer argued that the Bankruptcy Court correctly used the subjective test promulgated in *Meoli v. The Huntington National Bank (In re Teleservices Group, Inc.),* 444 B.R. 767 (Bankr. W.D. Mich. 2011).   Although *In re Teleservices* acknowledged that the case law "strongly favors an objective approach to assessing a transferee's good faith" it purported to adopt a "subjective" test of the transferee's lack of knowledge using the badges of fraud analysis.  *Id.* at 813-14.  But its proposed test is not entirely subjective.  It also used an objective analysis to determine the defendant's likely subjective knowledge.

The Bankruptcy Court there used "inquiry notice" and the badges of fraud approach to determine what the transferee knew and when it should have known, all of which are classic objective tests of intent and knowledge.  It did so because it

recognized that it is not likely that a transferee will admit that he knew of the fraud and it also recognized that the transferee cannot assert good faith if it "turned a blind eye" or failed to make "an honest effort to ferret out" the fraud. *Id.* at 774. Inquiry notice and a determination of what the transferee should have known are questions of fact for the jury.

The Sixth Circuit affirmed the decision in *Meoli v. The Huntington National Bank,* 848 F. 3d 716 (6th Cir. 2017), but in language that sounds more like the objective test than a subjective one.   The Court recognized that, in fact, the Bankruptcy Court used the "inquiry notice" analysis of the objective test as required by Sixth Circuit precedent to conclude that the Bank could not rely on the good faith defense after a certain date when it should have known of the possible fraud. *Id.* at 723.  It held that the Bankruptcy Court did not err in holding that the Bank was deprived of the good faith defense after the date that inquiry notice indicated the possible fraud.  *Id.* at 730.  Its subsequent discussion of the Sixth Circuit precedent and the facts of *Meoli* demonstrate how fact intensive the issue of good faith actually is.  Moreover, the Bankruptcy Court opinion was based on a trial, not a motion for summary judgment, from which the Court made findings of fact.  *In re Teleservices*, 444 B.R. at 772, fn. 3.  The Sixth Circuit decision did not discuss using a subjective test instead of an objective test, except in passing when

25

it held the Bankruptcy Court did not err.  It did not distinguish the numerous other decisions, including six Circuit Court of Appeals decisions, advocating the use of the objective test.

### D.     There Are Genuine Disputes Of Material Fact Regarding Inquiry Notice.

Appellant argued that he need not discuss the good faith evidence in detail because the Bankruptcy Court conceded that under the objective test there were genuine disputes of material facts that precluded summary judgment.  (Order at 50.)   Appellant noted that his expert witness testified that Oppenheimer was on inquiry notice of the fraud based on numerous "red flags," many of which were based on violations of its own procedures or NYSE regulations.  Oppenheimer responded by asserting that the red flags "fail to establish that Oppenheimer should have reasonably known about the Ponzi operation."  (Appellee Brief at 52.)  Its argument misses the point entirely.  It has the burden of proof on its affirmative defense.  The issue is whether there are genuine disputes of material fact regarding whether Oppenheimer should have been on inquiry notice so that it was required to conduct a reasonable investigation, which it admittedly did not.  The issue is not whether the red flags, without any investigation, establish that Oppenheimer should have known about the Ponzi operation.

Oppenheimer argued that it can establish good faith as a matter of law from

the simple allegation that the transactions were in the ordinary course of business. The cases it cited do not support such a broad conclusion.  It cited *Mercury Companies, Inc. v. FNF Sec. Acquisition, Inc. (In re Mercury Companies, Inc.)*, 2014 WL 1316163 (Bankr. D. Colo. Mar. 31, 2014) in support of its assertion that good faith may be present despite the defendant's knowledge of the transferor's distress.  The issue in the case was only whether the defendant gave reasonably equivalent value.  The Court ruled that good faith could be considered as part of the facts and circumstances in evaluating that issue. *Id.* at 8-9.  This Court also accepted that good faith was determined on an objective basis and declined to adopt a bright line rule that there was no good faith if the transferee was aware of the financial distress.  *Id.* at 10.  The Court was the trier of fact after a trial, instead of deciding a motion for summary judgment.

Similarly, Oppenheimer cited *Littleton v. Lanac Inv., LLC (In re Kudzu Marine, Inc.,),* 2017 WL 979018 (S.D. Al. Mar. 13, 2017) as finding good faith despite the fact that the transferee was on inquiry notice of the potential insolvency.  But the case was after a trial, and not a motion for summary judgment. It is also another case in the Eleventh Circuit in which the objective test of good faith is adopted.  *Id.* at 12.  Oppenheimer also cited *Musselman v. David Jones Ins. Inc. (In re Florida Eco-Safaris, Inc.),* 2014 WL 7261545 (Bankr. M.D. Fla. Dec.

19, 2014).  It is another case in the Eleventh Circuit in which the Court applied the objective test of whether the transferee knew or should have known of the fraud. Unlike here, there was no evidence in that case that the defendant knew or should have known.

Oppenheimer's citation of *Templeton v. O'Cheskey (In re Am. Housing Found.),* 785 F.3d 143 (5th Cir. 2015) also does not support its argument.  The Fifth Circuit there reversed the Bankruptcy Court because it did not use the two-prong objective test of inquiry notice and reasonably diligent investigation in determining the good faith defense, just as the Bankruptcy Court here failed to do.  *Id.* at 164. The case supports reversing the Bankruptcy Court here.

Oppenheimer attempted to distinguish *In re Manhattan Inv. Fund Ltd.* factually from this case.  Of course, the facts are not identical in the two cases.  It certainly could be argued that there were more red flags indicating inquiry notice here than in that case.  The point, however, is that both inquiry notice and whether a reasonably diligent investigation would have discovered the fraud are questions of fact for the jury.  *In re Manhattan Inv. Fund, Ltd,* 397 B.R. 22-23, 26.  Similarly its reference of *In re Bayou Group* ignores that the case held that whether a diligent investigation would have discovered the fraud is a question of fact for the jury. 439 B.R. at 317.

28

Perkins need not discuss the evidence on the good faith issue in detail because the Bankruptcy Court acknowledged that under the objective test there were disputed material facts such that summary judgment is not authorized here. Plaintiff's expert witness on the issue testified, based on his review of the records and other testimony, that Oppenheimer did not exercise good faith in accepting the transfers because it was on inquiry notice based on numerous "red flags" that IMA could be engaged in fraudulent activity or other violations of the securities laws and it failed to conduct any reasonably thorough investigation.

### E. Oppenheimer Failed To Meet Its Burden Of Proof On Its Good Faith Defense Even Under A Subjective Test.

Finally, Appellant Perkins argued that if the subjective test was the correct approach, Oppenheimer failed to meet its burden of proof because it did not offer any evidence regarding the badges of fraud analysis required by the test. The fact is that Oppenheimer did not use the subjective test to support its motion for summary judgment on the good faith issue and Plaintiff did not respond to it. Oppenheimer accepted the objective standard as the relevant test. Appellant asserted that the Bankruptcy Court could not decide the issue on a new test not addressed by either party and on a record that did not develop any evidence using the new analysis. Oppenheimer did not respond to the argument at all. It simply

29

ignored the undisputed record that it never presented any evidence or argued that the badges of fraud analysis of the *Teleservices* subjective test established as a matter of law that it is entitled to summary judgment on the good faith defense.  It simply did not meet its burden of proof on the affirmative defense of good faith if the subjective standard advocated by the Bankruptcy Court is used.

### CONCLUSION

The District Court should reverse the grant of summary judgment and final judgment and set the case for jury trial.

Respectfully submitted, this the 28th day of June, 2017.


/s/ Robert E. Shields
Robert E. Shields
Georgia Bar No. 642725
***Attorney for Appellant William F. Perkins***


DOFFERMYRE SHIELDS CANFIELD
 & KNOWLES, LLC
1355 Peachtree Street, Suite 1900
Atlanta, Georgia  30309
Telephone: (404) 881-8900
Facsimile: (404) 920-3246
E-mail: rshields@dsckd.com

30

## <u>CERTIFICATE OF COMPLIANCE</u>

This Brief complies with the type-volume limitations of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B) because, according to the word count function of Microsoft Word used to prepare the Brief, the Brief contains 6,963 words, including headings, footnotes and quotations, but excluding the cover page, Tables of Contents and Authorities, this Certificate of Compliance and the Certificate of Service.

This Brief complies with the typeface and the type style requirements of Local Rule 5.1C because the Brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point style.

This 28th day of June, 2017.

/s/ Robert E. Shields
Robert E. Shields
DOFFERMYRE SHIELDS CANFIELD
 & KNOWLES, LLC
1355 Peachtree Street, Suite 1900
Atlanta, Georgia  30309
Telephone: (404) 881-8900
Facsimile: (404) 920-3246
E-mail: rshields@dsckd.com

***Attorney for Appellant William F. Perkins***

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day, June 28, 2017, served a copy of the foregoing REPLY BRIEF OF APPELLANT by using the Court's electronic filing system which will automatically send email notification of such filing to all counsel of record and by causing copies of the same to be deposited in the United States mail, with first-class postage prepaid, as follows:

Terry R. Weiss
Greenberg Traurig LLP
3333 Piedmont Road, N.E.
Suite 2500, Terminus 200
Atlanta, Georgia  30305
***Counsel of Record for Defendant Oppenheimer & Co., Inc.***

Matthew T. Gensburg
Greenberg Traurig LLP
77 West Wacker Drive
Suite 3100
Chicago, Illinois  60601
***Counsel of Record for Defendant Oppenheimer & Co., Inc.***

Jeffrey M. Lippa
Greenberg Traurig LLP
1200 17th Street
Suite 2400
Denver, Colorado  80202
***Counsel of Record for Defendant Oppenheimer & Co., Inc.***

/s/ Robert E. Shields
Robert E. Shields
Georgia Bar No. 642725
***Attorney for Appellant William F. Perkins***

DOFFERMYRE SHIELDS CANFIELD
 & KNOWLES, LLC
1355 Peachtree Street, Suite 1900
Atlanta, Georgia  30309
Telephone: (404) 881-8900
Facsimile: (404) 920-3246
E-mail: rshields@dsckd.com

2